KRAFT, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 89–11–00637

*Sonnenberg, Anderson, O'Donnell & Rodriguez (Steven P. Sonnenberg* and *R. Kevin Williams)* for plaintiff.

*Stuart M. Gerson,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Mark S. Sochaczewsky*) for defendant.

(Dated June 24, 1992)

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

RESTANI, *Judge:* The court makes the following findings of fact and conclusions of law as a result of a trial *de novo*.

A. *Uncontested Facts:*

1. The plaintiff, Kraft, Inc., is the importer of record or consignee of the merchandise covered by the entries involved in this action, or is the party who paid the Customs charges on the entries. The merchandise covered by the subject entries consists of empty glass jars molded in the shape of a small seated bear. The jars have a capacity exceeding one pint. The merchandise is hereinafter referred to as the "bear jars."

2. The bear jars were manufactured by Consumers Glass Co. in Quebec, Canada. Consumers Glass is unrelated to plaintiff.

3. Upon liquidation of the subject entries, Customs classified the bear jars under item 546.52, Tariff Schedules of the United States (hereinafter "TSUS"), which provides:

> Articles chiefly used in the household or elsewhere for preparing, serving, or storing food or beverages, or food or beverage ingredients; smokers' articles, household articles, and art and ornamental articles, all the foregoing not specially provided for:
>
> \*        \*        \*        \*        \*        \*        \*
>
> Other glassware:
>
> \*        \*        \*        \*        \*        \*        \*
>
> Other:

546.52          Valued not over $0.30 each . . . . . . . . . . .    38% ad val.

Upon liquidation, Customs also increased the appraised value of the merchandise covered by Entry Number 331–1340203–7 by $39,066.35. This increase in value was an addition to transaction value for the value of a mold purchased by plaintiff and used by Consumers Glass to manufacture the bear jars.

At liquidation, Customs also assessed 10% marking duties on the value of the merchandise covered by Protest Numbers 0712–89–000475, 0712–89–000553, 0712–89–000477, and 0712–89–000474.

4. Plaintiff filed timely protests of Customs' liquidation of the subject entries pursuant to 19 U.S.C. 1514. The protests claimed classification of the bear jars under item 545.27, TSUS, which provides:

> Containers (except ampoules) chiefly used for the packing, transporting, or marketing of merchandise \* \* \* all the foregoing, of glass, with or without their closures and whether or not coated with plastic materials:
>
> \*        \*        \*        \*        \*        \*        \*
>
> Other:
>
> \*        \*        \*        \*        \*        \*        \*

545.27          Holding over 1 pint. . . . . . . . . . . . . . . . . . . . . . .    Free

Plaintiff also protested the addition of an assist charge to Entry Number 331–1340203–7 and the assessment of marking duties on the entries covered by Protest Numbers 0712–89–000475, 0712–89–000553, 0712–89–000477, and 0712–89–000474. Customs denied the protests on all grounds. After paying all liquidated duties on the subject entries, plaintiff timely summoned the protests. The Court has jurisdiction under 28 U.S.C. 1581(a).

5. In the Pre-Trial Order, the parties stipulated the issues involved in the assessment of marking duties on the entries covered by Protest Numbers 0712–89–000475, 0712–89–000553, 0712–89–000477, and 0712–89–000474. The parties agreed that in the event the subject merchandise is classified under item 545.27, TSUS, the bear jars will be excepted from the country of origin marking requirements set forth in 19 U.S.C. 1304 and that the marking duties assessed on the entries shall be refunded plus interest from the issuance of the summons on November 20, 1989. The parties further stipulated that, in the event the bear jars are classified under TSUS item 546.52, the marking duties were properly assessed by Customs.

6. In the Pre-Trial Order issued in this case, the parties also stipulated that an assist was provided by plaintiff to the manufacturer of the bear jars; that the value of the assist should be reduced to $22,267.82 to reflect the fact that 43% of the jars manufactured with the mold were purchased from the manufacturer by plaintiff's Canadian subsidiary and were not imported into the United States; and that the duties assessed on the value of the mold in excess of $22,267.82 shall be refunded with interest from the issuance of the summons covering Entry Number 331–1340203–7 on November 20, 1989.

7. The trial in this case was held on May 13, 1992, in Chicago, Illinois. The Court heard testimony from four witnesses called by plaintiff and from one witness called by defendant. The plaintiff's witnesses and their qualifications were:

a. Mrs. Henrietta Earle was employed by plaintiff for forty-two years prior to her retirement. At the time the imported merchandise was entered into the United States, Mrs. Earle was the Export/Import Logistics Manager and was responsible for all logistical matters related to the exportation and importation of the products sold by plaintiff or the materials used by plaintiff to manufacture or package those products.

b. Mr. John Milton has been employed by plaintiff for 30 years. He holds Bachelor's and master's Degrees in Dairy Manufacturing from Kansas State University and has been involved in the packaging and processing of food products throughout his career. His current position is Operations Business Manager for the Contract Plants and Administration where he is responsible for the manufacturing and distribution of five product lines. He also negotiates contracts with the contract packers used by plaintiff to manufacture and pack certain product lines and administers the Operations

Packaging Department which is responsible for the packaging specifications for all plaintiff's products.

c. Mrs. Wendy Serrino has been employed by plaintiff since 1987 and is currently the Brand Manager for Kraft Real Mayonnaise and Other Viscous Products. She has a Bachelor's Degree in Systems Engineering from the University of Virginia and a Master's in Management from Northwestern University. At the time the bear jars were imported, she was a Brand Assistant for fruit spreads. In this position, Mrs. Serrino executed consumer promotions, managed advertising budgets and provided monthly sales analyses.

d. Mr. Richard Lenny is currently the Executive Vice-President of Sales for Kraft USA. In this position, Mr. Lenny is responsible for sales of all Kraft products in the United States. He has been employed by plaintiff since 1977 and has been involved in the marketing of food products in each of his positions. He holds a Bachelor's Degree in Business Administration in Marketing from Georgia State University and a Master's of Business Administration Degree in Marketing and Finance from Northwestern University.

The defendant's witness was Mr. Joseph A. Deskovich. Mr. Deskovich is currently a sales representative for Continental Glass and Plastics Co. He is responsible for telephone sales and customer service.

The Court admitted into evidence the following exhibits which were introduced by plaintiff:

Plaintiff's Exhibit 1 — A sample of the bear jar.

Plaintiff's Exhibit 2 — A promotional display used by plaintiff in conjunction with the bear jar promotional program.

Plaintiff's Exhibit 3 — A glass jar in the shape of a chipmunk filled with Skippy brand peanut butter.

Plaintiff's Exhibit 4 — A diagram depicting the parts of the glass jars used to pack, transport and market food products.

Plaintiff's Exhibit 5 — An empty glass jar in the shape of a small dinosaur.

Plaintiff's Exhibit 7 — A sample of the subject merchandise packed with strawberry jam.

Plaintiff's Exhibit 9 — A promotional announcement used by plaintiff in conjunction with the bear jar promotional program.

Plaintiff's Exhibit 10 — A Mrs. Butterworth's pancake syrup bottle.

The defendant introduced one exhibit which was admitted into evidence by the Court:

Defendant's Collective Exhibit A — This collective exhibit consists of three glass jars. The first jar was filled with 32 ounces of Kraft brand strawberry jam, the second jar was filled with 18 ounces of Kraft brand apple jelly, and the third jar was filled with 18 ounces of Kraft brand strawberry jelly.

B. *Findings of Fact on Disputed Issues:*

1. The bear jars were sold by Consumers Glass only to plaintiff or its Canadian subsidiary corporation. The invoice price paid by plaintiff to Consumers Glass was $36.26, in Canadian dollars, per gross. This

equates to $0.25 per jar in Canadian dollars or approximately $0.20 per jar in U.S. dollars at the exchange rate in effect at the time of importation. The jars were shipped directly from Consumers Glass to Griffin Food Company in Muskogee, Oklahoma. Nearly all the bear jars imported by plaintiff were used by Griffin Food to pack grape jelly or strawberry jam. The food product is considerably more valuable than the jar. The jars which were not used to pack food products were destroyed. The bear jars were not sold by plaintiff to any other person in their imported condition.

2. Glass containers used to pack, transport or market food products have the parts depicted in Plaintiff's Exhibit 4. These parts include a sealing surface, glass lugs used to attach the closure, the finish (which refers to the sealing surface and the glass lugs), the body (which includes the shoulder, the sidewall and the heel), the mold seam, and the bearing surface which supports the jar on the shelf. These parts are essential in order for the containers to function as a sanitary container for food products and to safely transport the food products from the packing plant to the grocery store. The bear jars have all the parts depicted in Plaintiff's Exhibit 4.

3. Griffin Food is a contract packer hired by plaintiff to pack jams, jellies and other food products. Under such a contract, Griffin Food packed the bear jars with grape jelly and strawberry jam using the hot pack process. In the hot pack process jams, jellies and other food products are heated and then poured into glass containers. Steam is then injected onto the top of the food product and a lid is fastened to the jar. The steam heats the sealing material inside the lid and, as the steam cools, creates a vacuum in the jar which draws the lid tightly against the sealing surface of the jar. The seal created in this process preserves the food products and allows the consumer to readily determine whether the seal has been broken. The bear jars were designed for use in the hot pack process.

4. The bear jars were used in a promotional program created by plaintiff to market strawberry jam and grape jelly. The goal of the program, which was used throughout the United States, was to reinforce the strategy that Kraft jams and jellies are the "fun brand which appeals to kids." Plaintiff's Exhibit 9. The promotional poster, Plaintiff's Exhibit 2, was designed to use in the off-shelf/end-aisle promotion pack provided to grocers as part of the promotion. Plaintiff's Exhibit 9.

Plaintiff did not conduct any studies to determine whether the bear jars were reused in the manners depicted in the promotional poster. Plaintiff was not interested in this information but was only interested in whether the promotion resulted in increased sales of Kraft's jams and jellies.

5. Promotional strategies such as that employed by plaintiff in the bear jar promotion are often used to market food products. The design of the container in such promotions is important since packaging plays a critical role in the marketing of good products. The container provides the physical means of delivering the food product to the consumer and

establishes the image of the product in the consumer's mind. The design of the package also attracts the consumer's attention to the food product in the store. This function is crucial in marketing food products since 80% of food purchasing decisions are made in the store. The importance of package design is illustrated by the well-known container used to market Mrs. Butterworth's pancake syrup (Plaintiff's Exhibit 10).

6. The lug finish on the bear jars is used to fasten the lid to the jar and to facilitate the seal created in the hot pack process. The lug finish makes the jars unsuitable for use with any type of lid other than that used by plaintiff to pack the strawberry jam and grape jelly into the bear jars. The lug finish readily shows that the bear jars were originally used to pack food products. For this reason, the bear jars would likely not be purchased by consumers if they did not contain jam or jelly. The bear jars, at least because of the lug finish, the mold seam, and the utilities lid necessitated by the lug finish, are not particularly handsome. The bear jars are also reusable only in the same manner as any other glass container in which food products are packed and marketed. They are not usable for home canning or preservation.

## CONCLUSIONS OF LAW

1. The competing tariff items are "use" provisions and, accordingly, classification of articles therein is controlled by General Headnote 10(e)(i), Tariff Schedules of the United States (1987), which provides:

> [A] tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the control- · ling use is the chief use, i.e., the use which exceeds all other uses (if any) combined[.]

2. The evidence presented by plaintiff has rebutted the presumption of correctness (28 U.S.C. 2639(a)) which attaches to the classification by Customs at liquidation. Defendant introduced no evidence to support its classification of the bear jars as household articles under item 546.52, Tariff Schedules of the United States (1987). The bear jars are clearly not decorative or ornamented. They have no specific function. The evidence demonstrates that they are used to pack and market a food product. The evidence also demonstrates that they have all of the characteristics necessary for glass food packing jars and, although their shape is more elaborate than straight-sided jars, it is not more elaborate than several well-known jars (Plaintiff's Exhibits 3, 10) commonly used to pack and market food products. The bear jars are beyond doubt chiefly so used. Accordingly, the bear jars are not classifiable under item 546.52, Tariff Schedules of the United States (1987).

3. The "class or kind" or articles "embraced by the provisions of item 545.27 are the usual, ordinary, and commonly used glass containers for various commodities or merchandise." *Riekes Crisa Corp. v. United States*, 84 Cust. Ct. 132, 155, C.D. 4852 (1980).

4. In *United States v. Carborundum Co.*, 63 CCPA 98, C.A.D. 1172, 536 F.2d 373 *cert. denied*, 429 U.S. 979 (1976), the court held:

> Factors which have been considered by courts to be pertinent in determining whether imported merchandise falls within a particular class or kind include the general physical characteristics of the merchandise, the expectation of the ultimate purchasers, the channels, class or kind of trade in which the merchandise moves, * * * the environment of the sale[,] * * * the use, if any, in the same manner as merchandise which defines the class, the economic practicality of so using the import, [and] the recognition in the trade of this use.

63 CCPA at 102, 536 F.2d at 377 (citations omitted). The physical characteristics of the usual and ordinary glass containers used to pack and market food products are depicted in Plaintiff's Exhibit 4. In addition, such glass containers must be designed for use in the hot pack process. The bear jars possess these physical characteristics.

The purchasers of food products packed in glass containers expect to receive a sanitary product and may also be attracted to the food products by the design of the package. Evidence on the price of the products in comparison with the price of the jar indicates the consumers ordinarily would not purchase the food product as a means to acquire the container. Acquisition of the container is incidental. The bear jars were used by plaintiff to deliver a clean, quality product to the consumer and to attract the consumer's attention to the product in an attempt to increase sales.

Glass containers used for food products generally move through channels of trade which run directly from the manufacturer to the packing plant where the jars are used to pack food products. Occasionally, the glass containers may be purchased by the food packer from wholesale jobbers such as the company represented by Mr. Deskovich. These glass containers are never sold directly to the consumer. The bear jars were purchased directly by plaintiff from the manufacturer and were shipped directly to the contract packing plant where the jars were packed with jam and jelly. They were not sold to consumers in their imported condition.

Packaging plays a key role in the marketing of food products. In the sale environment, the packaging attracts the consumer's attention and is designed to increase sales of the food product packed in the container. The bear jars were designed and used by plaintiff solely to attract the attention of the consumer to the plaintiff's strawberry jam and grape jelly and, thereby, increase sales.

Examination of the foregoing *Carborundum* factors clearly shows that the bear jars form part of the class or kind of usual and ordinary glass containers used to pack and market food products. The bear jars, therefore, fall within the class or kind of merchandise embraced by item 545.27, TSUS.*

---

* Subsequent to trial defendant suggested the alternative classification of 548.05, TSUS, articles of glass. As the court finds the items in issue are containers, this general provision does not apply.

5. The evidence presented by plaintiff clearly establishes that the subject bear jars are chiefly used to pack and market grape jelly and strawberry jam. Accordingly, the bear jars are properly classified under item 545.27, TSUS, and are free of duty. All duties paid on the bear jars at liquidation shall be refunded with interest from the issuance of the summons on November 20, 1989.

6. Pursuant to the stipulation of the parties, the classification of the jars under item 545.27, TSUS, results in their exception from the country of origin marking requirements set forth in 19 U.S.C. 1304. The marking duties assessed on the entries covered by Protest Numbers 0712–89–000475, 0712–89–000553, 0712–89–000477, and 0712–89–000474 shall be refunded plus interest from the issuance of the summons on November 20, 1989.

7. Pursuant to the stipulation of the parties, the value of the assist provided by plaintiff to the manufacturer of the bear jars is $22,267.82. The addition to the appraised value of Entry Number 331–1340203–7 shall be reduced to reflect the correct value of the assist. Since the bear jars are dutiable at the rate of free, all duties collected on the value of the assist shall be refunded with interest from the issuance of the summons on November 20, 1989.